IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**RAMONA POPE**, )
)
    Plaintiff, )
)
v. ) 2:16cv609
) **Electronic Filing**
**WILKINSBURG BOROUGH SCHOOL** )
**DISTRICT**, **JOSEPH PETRELLA**, )
**RICHARD LIBERTO**, **EDWARD** )
**DONOVAN** and **KLARA BROWN**, )
)
    Defendants. )

## MEMORANDUM OPINION

September 16, 2019

**I.**     **INTRODUCTION**

In her Amended Complaint, Plaintiff, Ramona Pope ("Pope" or "Plaintiff"), asserts the following claims against Defendants, Wilkinsburg Borough School District (the "District"), Joseph Petrella ("Petrella"), Richard Liberto ("Liberto"), Edward Donovan ("Donovan"), and Klara Brown ("Brown") (collectively "Defendants"): (1) substantive Due Process under 42 U.S.C. § 1983 (Count I); (2) Civil Conspiracy to violate Constitutional Rights (Count II); (3) Retaliation in violation of the Pennsylvania Whistleblower Law, 43 PA. CON. STAT. ANN. § 1421 *et seq.* (Count III); (4) Defamation (Count IV); (5) Intentional Infliction of Emotional Distress (Count V); (6) Breach of Contract (Count VI): (7) Tortious Interference with Contractual Relations (Count VII); (8) Racial Discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 *et seq.* ("Title VII") (Count VIII); (9) Retaliation in violation of Title VII (Count IX); (10) Aiding and Abetting Discrimination and Retaliation under the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. §§ 951 *et seq.* (the "PHRA") (Count X); (11) Discrimination and Retaliation under the PHRA (Count XI); and (12) Equal Protection

under 42 U.S.C. § 1983 (Count XII). Defendants' Motion to Dismiss was granted with regard to Counts VIII, X and XI.

Defendants have filed a Motion for Summary Judgment, Pope has responded to the motion and to the Defendants' Concise Statement of Undisputed Material Facts ("Def. CSUMF"), but has failed to file a brief in opposition to the motion for summary judgment.[1] Pope's failure to file a brief in opposition is not sufficient to justify the entry of summary judgment. FED. R. CIV. P. 56; *See also Durant v. Husband*, 28 F.3d 12, 17 409 (3d Cir. 1994). There must be facts of record to support the claims on the merits. *Id.* Therefore, this Court must still engage in a legal analysis of the case to determine, based on the facts of record, if summary judgment is warranted. FED. R. CIV. P. 56(e).

## II. STATEMENT OF THE CASE

Petrella was the District's Superintendent, responsible for the day-to-day administration, including the enactment and enforcement of the District's policies and practices. Am. Compl. ¶ 10. Donovan served as President of the District's School Board from 2012 through December 2017. Def. CSUMF ¶ 15. Brown was elected to the District's School Board in 2013. Def. CSUMF ¶ 16. In September 2015, Liberto became the Business Manager for the District, responsible for budget and financial operations. Am. Compl. ¶ 12. Peter Camarda ("Camarda") was hired as the interim Business Manager for the District in May of 2015 and served through November of 2015. Def. CSUMF ¶ 22.

---

[1] The Local Rules of the United States District Court for the Western District of Pennsylvania require that Pope file a memorandum of law in opposition to the motion for summary judgment that addresses applicable law and explains why there are genuine issues of material fact to be tried and/or why the moving party is not entitled to judgment as a matter of law. *See* LR 56.1(C)(2).

In June of 2013, Pope, an African-American woman, was hired by the District to work in the Payroll Department as a consultant to perform payroll services from June 12, 2013, through June 28, 2013, as a rate of $200 per day, for a total cost of $2,480. Def. CSUMF ¶¶ 1 & 2[2]. On September 24, 2013, the District approved an extension of the consultant agreement with Pope for Payroll/Human Resources ("HR") services from September 1, 2013 through October 31, 2013 at the rate of $315 per day. Def. CSUMF ¶ 3. On October 22, 2013, the District approved an agreement with Pope to perform Payroll/HR consulting duties from November 1, 2013 through December 31, 2013 or such dates as determined by the Superintendent in an amount not to exceed $10,710. Def. CSUMF ¶ 4. In December of 2013, and in January, February and March of 2014, the District approved an agreement with Pope for the performance of Payroll/HR consulting services on a monthly basis for various monthly fees. Def. CSUMF ¶¶ 5-8.

On April 22, 2014, the District approved an agreement with Pope for the performance of Payroll/HR consulting services from May 1, 2014, through June 30, 2014, for an amount not to exceed $5,035.00 per month. Def. CSUMF ¶ 9. In August of 2014, the District approved an agreement with Pope for the performance of consulting services for the period of September 1, 2014, through December 31, 2014, at a rate of $300 per day, not to exceed $6,700 per month. Def. CSUMF ¶ 10. In December of, 2014, and in May of 2015 the District approved an agreement with Pope for the performance Finance and Operations/HR consulting services for the periods of January 1, 2015, through June 30, 2015, and from July 1, 2015, through December 31, 2015, at a rate of $300 per day not to exceed $6700 per month. Def. CSUMF ¶¶ 11 & 12.

---

[2] In Paragraphs 2 through 13 of Pope's Response to Defendants' Concise Statement of Undisputed Material Facts, she denies and disputes the facts set forth therein with the same general statement that "[t]he District's Board Secretary often made mistakes with regard to payment amounts to consultants . . . which led to inaccurate Board minutes." Pope fails to specifically set forth a basis for the denial of the fact set forth by Defendants. Accordingly, Paragraphs 2 through 13 of Defendants' Concise Statement of Undisputed Material Facts are deemed admitted.

Finally, on August 25, 2015, the District approved the hiring of Pope to the position of Affirmative Action Officer and Title IX Compliance Coordinator effective immediately through December 1, 2015. Def. CSUMF ¶ 13.

During the summer of 2015, Pope observed Camarda and Lori Seaman using Phillip Martell's login and password to finish the direct deposit and approval of the taxes. Def. CSUMF ¶ 23. Pope reported the use of the passwords to Petrella in July 2015. Def. CSUMF ¶ 25.

During the interviews for the Business Manager in 2015, the School Board was aware of, and Liberto discussed, allegations made against him by the Penn Hills School District ("PHSD") with regard to his employment with PHSD. Def. CSUMF ¶ 26. On August 25, 2015, the District approved a two (2) year contract with Liberto as the Director of Finance and Operations with an official start date of September 9, 2015. Def. CSUMF ¶ 29. That same day Liberto forwarded to Pope paystubs provided directly by PHSD showing his sick days. Def. CSUMF ¶ 30. On August 28, 2015, Liberto submitted a conditional letter of resignation to PHSD's attorney, effective September 3, 2015, in order to accept employment with the District. Def. CSUMF ¶ 33.

After Liberto was hired, Petrella informed Pope that she was to report to Liberto. Def. CSUMF ¶ 34. Pope admits that, around the time of Liberto's hire, she started her own investigations into Petrella's moving expenses and into both Liberto's sick leave transfer and resignation from PHSD. Def. CSUMF ¶ 35. Soon after, Petrella directed Pope not to attend any more personnel debriefs or and to contact the School Board directly without his authorization. Def. CSUMF ¶ 36.

On October 12, 2015, Liberto, as representative of the District, entered into an agreement with Maher Duessel for the accounting firm to conduct an investigation and create a report comparing the billing and payments to Pope for her consulting services to the agreed upon per

4

diem and monthly rates and the operational school calendar. Def. CSUMF ¶ 38. Liberto contends that at that time, he was not aware that Pope was investigating the transfer of his sick days from PHSD, the circumstances surrounding his ongoing hearings with PHSD, or Petrella's moving expenses. Def. CSUMF ¶ 40.  On October 13, 2015, Pope was informed by the District that her services would no longer be needed and that she was under investigation for theft. Def. CSUMF ¶ 39.

### III.	LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*.  The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of

the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial. *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

IV. **DISCUSSION**

    A. <u>42 U.S.C. § 1983-Violation of Substantive Due Process</u>

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Thus, to establish a claim under this statute, "a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc). At Count I of the Amended Complaint, Pope alleges that the Defendants violated her First Amendment rights by retaliating against her and chilling her constitutionally protected speech.

The Court's analysis of a First Amendment claim was summarized by the Court of Appeals for the Third Circuit as follows:

A public employee's retaliation claim[3] for engaging in protected activity must be evaluated under a three-step process. First, plaintiff must establish the activity in question was protected. For this purpose, the speech must involve a matter of public concern. *Connick* [*v. Myers*], 461 U.S. [138,] 147 [(1983)]. Once this threshold is met, plaintiff must demonstrate his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (requiring courts to strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees"). These determinations are questions of law for the court.

If these criteria are established, plaintiff must then show the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977). Lastly, the public employer can rebut the claim by demonstrating "it would have reached the same decision ... even in the absence of the protected conduct." [*Id.*]. The second and third stages of this analysis present questions for the fact finder...

*Baldassare v. State of N.J.*, 250 F.3d 188, 194-195 (3d Cir. 2001) (other citations omitted).

In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution will not insulate their communications from employer discipline." *Id.* at 421. The "'controlling factor' is whether the statements were 'made pursuant to [the speaking employee's] duties,' that is, whether such utterances were among the things that the employee 'was employed to do.'" *Flora v. County of Luzerne*, 776 F.3d 169, 177 (3d Cir. 2015) (quoting *Garcetti, supra* at 421).

Defendants argue that Pope is not entitled to First Amendment protection in this instance because she was not speaking as a private citizen, but instead was speaking pursuant to her official duties as a consultant for the District. Pope contends that she was "silenced" and

---

[3] Independent contractors with a government entity, as Pope is here, are protected by the First Amendment and are treated similarly to public employees for purposes of First Amendment retaliation claims. *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 673, 116 S. Ct. 2342, 135 L. Ed. 2d 843 (1995).

7

retaliated against because she had information with regard to "misuse, wrongful conduct and waste, which included the inappropriate use of passwords, Liberto's hiring [and transfer of sick days], and Petrella's use of moving expenses. Plaintiff's Concise Statement of Material Facts (Pl. CSMF") ¶¶ 52 & 83.

By her own admission, Pope's work with the District focused on human resource and payroll issues, and in such capacity, she became aware of the inappropriate use of passwords, the lack of receipts with regard to Petrella's moving reimbursement and the hiring of Liberto. Pl. CSMF ¶¶ 42, 48, 49 & 52. Any alleged "Whistleblower" statements made by Pope regarding such issues, therefore, relate directly to her duties as a Finance and Operations/HR consultant for the District. *See Anderson v. Bd. of Sch. Dirs. Of the Millcreek Twp. Sch. Dist.*, 2013 U.S. Dist. LEXIS 41826, at \*\*58-59 (W.D. Pa. Mar. 26, 2013).

This Court is unable to find any evidence that Pope was going to make any statements about the District's alleged failings that were outside the scope of her duties and responsibilities of her position with the District. Moreover, Pope makes no argument and directs this Court to no cognizable evidence that she was speaking as a private citizen. As set forth above, Pope "cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion." Pope's speech regarding the alleged misdeeds of the District and various Defendants, therefore, is not entitled to First Amendment protection. Accordingly, summary judgment shall entered be entered in favor of the Defendants with regard to Pope's Substantive Due Process claim at Count I of her Amended Complaint.

B. <u>42 U.S.C. § 1983-Civil Conspiracy to Violate Constitutional Rights</u>

"In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive [her] of a federally protected right." *White v. Brown*, 2010 U.S. Dist. LEXIS 41583, \*21-23 (D. Del. April 28, 2010) (quoting

*Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999)). As explained above, Pope is unable to demonstrate a deprivation of her rights under the First Amendment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E*, 172 F.3d at 254 (a conspiracy claim requires a showing that plaintiff suffered deprivation of a constitutionally protected right); *Young v. New Sewickley Twp.*, 160 Fed. Appx. 263, 267 (3d Cir. 2005) (finding that conspiracy claim under § 1983 cannot proceed without establishing an underlying violation of a constitutional right); *Holt Cargo Sys. Inc. v. De. River Port Auth.*, 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998) (there can be no liability for a conspiracy to violate section 1983 without an actual violation of section 1983); *Defeo v. Sill*, 810 F. Supp. 648, 658 (E.D. Pa. 1993) ("Without an actual deprivation [of a federal right], there can be no liability under § 1983.").

Furthermore, Pope fails to direct this Court to any evidence in the record indicating that Defendants had any type of an agreement or took any concerted action with respect to the alleged violation of her constitutional rights. *See Pugh v. Downs*, 641 F. Supp. 2d 468, 475 (E.D. Pa. 2009) ("In order to state a conspiracy claim under Section 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive her of a constitutional right under color of state law."); *see also Loftus v. Se. Pa. Transp. Auth.*, 843 F. Supp. 981, 987 (E.D. Pa. 1994) (explaining that a conspiracy under § 1983 requires the plaintiff to allege that the actions taken were interdependent and part of some concerted action on the part of the defendants, such that "[p]arallel but independent action by separate actors does not import conspiracy"). Because Pope cannot establish either a violation of her constitutional rights or an agreement among Defendants to deprive her of a constitutional right, summary judgment will be granted with respect to her conspiracy claim at Count II of her Amended Complaint.

C. <u>Discrimination Based on Retaliation Under Title VII</u>

In Paragraph 154 of her Amended Complaint, Pope alleges the Defendants "retaliated against Plaintiff, *inter alia*, by denying her continued employment, opportunities for and benefits of employment on the basis of their having opposed unlawful practices, in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 *et seq.* as amended." Am. Cmplnt. ¶ 154. Defendants argue that Pope failed to exhaust her administrative remedies and judgment must be entered in their favor.

Before instituting an action under Title VII, a plaintiff must timely file his or her claim with the Equal Employment Opportunity Commission (the "EEOC") and obtain a right to sue letter from the agency. *See* 42 U.S.C. § 2000e-5. Such conditions precedent are statutory, rather than jurisdictional, prerequisites, comparable to a statute of limitations. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Anjelino v. The New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999). Accordingly, claims under Title VII can be dismissed for failure to exhaust such administrative remedies. *See Angelino v. The New York Times Co.*, 200 F.3d at 87-88; *Knoll v. Springfield Township Sch. Dist.*, 699 F.2d 137, 145 (3d Cir. 1983), *vacated on other grounds*, 471 U.S. 288 (1985).

Here, neither the Amended Complaint nor any of Pope's filings with regard to Defendants' motion for summary judgment, make any allegation that she filed any administrative charges with the EEOC. Having failed to file an EEOC complaint and being time-barred from doing so at this juncture, Pope's Title VII claim must be dismissed for failure to exhaust administrative remedies.

D. <u>Equal Protection under 42 U.S.C. § 1983</u>

Pope alleges that she is a member of a protected class and that the District treated similarly situated individuals outside of the protected class differently. Am. Cmplnt. ¶¶ 170 –

177. Pope further contends that she was subject to disparate treatment as she was paid less and given more duties than the other non-minority consultants. Am. Cmplnt. ¶ 174.

To prevail on a § 1983 claim for denial of equal protection, a plaintiff must prove the existence of purposeful discrimination by demonstrating that, based on membership in a protected class, he or she received "different treatment from that received by other individuals similarly situated." *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990). Thus, an "essential element of a claim of selective treatment under the Equal Protection Clause is that the [plaintiff has identified] comparable parties [who] were 'similarly situated.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Id.* (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). *See also Boyer v. City of Philadelphia*, 2019 U.S. Dist. LEXIS 29567, *8-9 (E.D.Pa. Feb. 22, 2019) (stating that persons are similarly situated if they are alike in all relevant respects, including the employees dealt with the same supervisors, were subject to the same standards, and had engaged in similar conduct).

As an African American, Pope is a member of a protected class, however she fails to direct this Court to any evidence that she was treated differently than any other similarly situated consultant. Pope contends that she was "the only minority consultant with the District, and other consultants similarly situated as Ms. Pope accounted for their time in the same manner, but they were not investigated even though they were paid more than what the school board minutes reflected." Pl. CSMF ¶ 213. Pope further testified that Barb Mehalov, Pete Camarda and Dr. Matsook were consultants who "were overpaid . . . worked from home" but were not investigated as she was. Pope Deposition pp. 288-290. Pope makes no argument nor provides any analysis that would allow this Court to acknowledge that Mehalov, Camarda and Matsook

11

are indeed comparable parties who are similarly situated. Camarda was hired as the Business Manager of the District, Matsook was the Superintendent of the District and Mehalov was hired to work with the District's curriculum. Pope has provided no evidence that she and such comparators were alike "in all relevant aspects."

Accordingly, Pope's claim under the Equal Protection Clause fails as a matter of law. Summary judgment will be entered in favor of the Defendants on Pope's claim at Count XII of the Amended Complaint.

### E. Remaining State Claims

Having found in favor of Defendants' on Counts I, II, IX, and XII, all of Pope's remaining claims are state law claims which include: (1) Retaliation in violation of the Pennsylvania Whistleblower Law, 43 PA. CON. STAT. ANN. § 1421 *et seq.* (Count III); (2) Defamation (Count IV); (3) Intentional Infliction of Emotional Distress (Count V); (4) Breach of Contract (Count VI); and (5) Tortious Interference with Contractual Relations (Count VII)[4]. Moreover, Defendants' Counterclaim includes all state claims as follows: (1) Conversion (Count I); (2) Fraud (Count II); (3) Fraudulent Misrepresentation (Count III); and (4) Negligent Misrepresentation (Count IV). Because summary judgment will be entered in favor of Defendants on the only claims that give this Court federal question jurisdiction, the Court will decline to exercise pendant jurisdiction over the remaining nine (9) state claims.

The Supreme Court has made it clear that a district court's decision to decline to exercise supplemental jurisdiction over pendant state law claims is purely discretionary, opining:

> With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise (citation omitted). A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary. (citations omitted)...As a result, the [district] court's exercise of its discretion under § 1367(c) is not a jurisdictional matter...

---

[4] The Court having previously dismissed Counts VIII, X and XI.

*Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009). The Supplemental Jurisdiction statute states in relevant part that:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

The state claims in this matter predominate-in their numerosity-over the claims over which the district court had original jurisdiction. Moreover, the Plaintiff, having failed to file a brief in opposition to the Defendants' motion for summary judgment, exhibited little interest in maintaining her claims. Accordingly, Counts III, IV, V, VI and VII of the Amended Complaint, and Counts I, II, III and IV of the Amended Counterclaim will be dismissed without prejudice so the parties may proceed with these claims in the appropriate state trial court if they wish.

### V. CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment shall be granted as to Counts I, II, IX, and XII of the Amended Complaint. The Court shall decline pendant jurisdiction over the remaining state claims and such claims will be dismissed without prejudice. An appropriate Order follows.

s/ DAVID STEWART CERCONE  
David Stewart Cercone  
United States District Judge

cc:	Steven M. Toprani, Esquire  
Michael J. Hammond, Esquire  
Joseph R. Dalfonso, Esquire  
Teresa O. Sirianni, Esquire  
Danielle M. Vugrinovich, Esquire  
Allison N. Genard, Esquire  

(*Via CM/ECF Electronic Mail*)